## S04W1751. HICKS v. SCHOFIELD.
(599 SE2d 156)

### ORDER OF THE COURT.

Upon consideration of the application for a certificate of probable cause to appeal, it is ordered that it be hereby denied. *Hicks v. State*, 256 Ga. 715 (352 SE2d 762) (1987); *Fleming v. Zant*, 259 Ga. 687 (4) (386 SE2d 339) (1989); *Carruthers v. State*, 272 Ga. 306, 310 (528 SE2d 217) (2000); *Stevens v. Kemp*, 254 Ga. 228 (2) (327 SE2d 185) (1985). The stay issued by this Court on June 30, 2004, is dissolved.

*All the Justices concur, except Fletcher, C. J., and Benham, J., who dissent.*

FLETCHER, Chief Justice, dissenting.

I strongly dissent to the denial of petitioner's motion for certificate of probable cause to appeal and the denial of the stay of execution.

Petitioner makes a substantial and credible claim of mental retardation that this Court has never addressed. A licensed neuropsychologist has concluded that there is a reasonable probability that petitioner is mentally retarded. This doctor bases his conclusion on petitioner's medical records and history. Petitioner suffers from fetal alcohol syndrome and is microcephalic, meaning his brain is two standard deviations smaller than normal. He has a family history of mental retardation, failed three grades in elementary school, dropped out of school in eighth grade at age 16, and suffered a closed head injury following a motorcycle accident. Despite this history, the doctor is unable to give a definitive diagnosis without interviewing petitioner and conducting the appropriate testing. The State has steadfastly refused to allow the doctor to conduct the test.

Based upon state law,[1] petitioner began asking permission for the expert to enter the prison to conduct testing and an examination in 1992. Even though petitioner was not seeking state funds, only access by the doctor, the state habeas court denied the request for access and then denied petitioner's habeas petition because petitioner had not presented expert evidence of his mental retardation. Inexplicably, this Court denied the petition for probable cause to appeal that ruling. Accordingly, this Court has never substantively considered the claim, and the majority refuses to do so now, despite the fact that the evidence the State relied upon in 1992 to challenge petitioner's claim has been substantially discredited.

Under *Atkins v. Virginia*,[2] the execution of the mentally retarded is barred by the United States Constitution. The federal claim has

---

[1] See *Fleming v. Zant*, 259 Ga. 687 (386 SE2d 339) (1989).

[2] 536 U. S. 304 (122 SC 2242, 153 LE2d 335) (2002).

never been presented and is not res judicata based on the earlier denial of petitioner's state law claim because the two claims are not co-extensive.[3] Additionally, although states are free to devise their own procedures to protect the federal constitutional right,[4] "the lodestar of any effort to devise a procedure must be the overriding dual imperative of providing redress for those with substantial claims and of encouraging accuracy in the factfinding determination."[5] A state law procedure that allows a habeas court to deny access to an expert and then dismiss the petition for lack of an expert fails to provide adequate protection for the federal constitutional right. Furthermore, because it would constitute a miscarriage of justice to execute someone who is mentally retarded, the state law claim is also viable.[6]

I would also grant the CPC to address two other substantial issues. First, the federal courts have concluded that on direct appeal this Court wrongly decided petitioner's federal constitutional claim based on *Ake v. Oklahoma*.[7] I agree with this analysis. The crux of this claim is that the trial court violated federal constitutional principles in failing to provide access to psychiatric assistance for petitioner's defense of insanity. The Eleventh Circuit's conclusion that the *Ake* error was harmless is not binding or persuasive because it did not apply the harmless error analysis in *Chapman v. California*[8] that this Court is required to apply. Because of concerns of federal courts encroaching upon state sovereignty, the federal courts apply a more lenient harmless error analysis in habeas proceedings.[9] Under *Chapman*, the State here has failed to meet its burden that the *Ake* error was harmless at least with respect to the sentencing phase. The habeas record shows that a qualified neurologist opined that petitioner suffers from a "neurological impairment of organic brain disorder." However, no evidence from this or another qualified neurologist was presented at trial. Indeed, petitioner's expert at trial speculated as to what a neurological exam might reveal, but she also admitted that she was not a qualified neurologist.

---

[3] *Head v. Hill*, 277 Ga. 255, 260 (587 SE2d 613) (2003) ("we must give the new federal right to death penalty exemption [based on mental retardation] retroactive effect to the extent that it exceeds any preexisting, comparable State right.").

[4] 536 U. S. at 317.

[5] *Ford v. Wainwright*, 477 U. S. 399, 417 (106 SC 2595, 91 LE2d 335) (1986).

[6] *Turpin v. Hill*, 269 Ga. 302, 303 (498 SE2d 52) (1998).

[7] 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985).

[8] 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).

[9] *Hicks v. Head*, 333 F.3d 1280, 1286 (2003).

Second, the prosecutor's invocation of divine law to convict petitioner is problematic at best. In *Carruthers v. State*,[10] this Court held that the use of "[l]anguage of command and obligation from a source other than Georgia law" could violate a defendant's constitutional rights to due process. Although we recognized that "[i]t is difficult to draw a precise line between religious arguments that are acceptable and those that are objectionable,"[11] we set forth an analysis intended to protect those rights. To that end, we prohibited the State from "invok[ing] a higher moral authority and divert[ing] the jury from the discretion provided to them under state law."[12]

In the closing argument of petitioner's trial, the prosecutor referenced the commandment "Thou shalt not kill," and compared it to the defense's theory that the defendant lacked the required mental state to sustain a conviction for malice murder. The prosecutor said:

> Even God holds man accountable for murder. Thou shalt not kill, and be held responsible only if you know what you're doing? No, it doesn't say that. Or only if it's a normal killing? It doesn't say that. It says, thou shalt not kill. God says that. Are we to hold ourselves in any higher position than God, Himself? No.

The prosecutor was plainly asking the jury to apply the unconditional rule "Thou shalt not kill" regardless of the state's laws on mental intent. In so doing, he asked the jury to apply divine law instead of state law, and thereby violated the rule established in *Carruthers*. Although this Court summarily condoned the prosecutor's argument in one sentence on petitioner's direct appeal,[13] we are not precluded from revisiting that issue because the direct appeal occurred before we established the far stricter analysis set forth in *Carruthers*.[14]

Although it is possible that the prosecutor's argument may constitute harmless error even if it violated the standards set forth in *Carruthers*, I am unable to escape the conclusion that the issue warrants a more detailed review. Unfortunately, this Court has chosen otherwise, and the issue will now be foreclosed.

---

[10] 272 Ga. 306, 310 (528 SE2d 217) (2000).

[11] Id.

[12] Id.

[13] *Hicks v. State*, 256 Ga. 715, 731 (352 SE2d 762) (1987).

[14] See *Bruce v. Smith*, 274 Ga. 432, 434 (553 SE2d 808) (2001) (a claim will not be barred as res judicata if "there has been an intervening change in the law since we decided the issue [on] direct appeal.").

BENHAM, Justice, dissenting.

I dissent to the denial of petitioner's motion for certificate of probable cause to appeal and to the denial of the stay of execution because I believe we need to fully explore petitioner's contentions concerning *Carruthers v. State*, 272 Ga. 306 (528 SE2d 217) (2000) as well as the ramifications of the determination of the U. S. Court of Appeals for the Eleventh Circuit finding error with this Court's original decision on petitioner's constitutional claim based on *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985).

DECIDED JULY 1, 2004.

*August F. Siemon III*, for appellant.

*Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General*, for appellee.

